IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KEITH ANTHONY SMITH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO.: 3:15cv86-WC |

# MEMORANDUM OPINION

## I. INTRODUCTION

Keith Anthony Smith ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*, on March 5, 2012. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of February 28, 2012, through the date of the decision. Plaintiff appealed to the Appeals Council, which issued a decision affirming the ALJ's decision. The Appeals Council's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 11). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

4

> similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty years old on the alleged disability onset date, and had a tenth-grade education although he never achieved his GED.  Tr. 52, 55.  Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since February 28, 2012, the alleged onset date[.]"  Tr. 46.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "chronic obstructive pulmonary disease; bronchitis with ongoing tobacco abuse; obesity; sever [sic] bullous emphysema; benign pulmonary nodule, right lung; and pulmonary arterial hypertension[.]"  Tr. 46.  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  Tr. 48. Next, the ALJ articulated Plaintiff's RFC as follows:

> [Plaintiff] has the [RFC] to perform a light work as defined in 20 CFR 404.1567(b) except that on a function-by-function basis, [Plaintiff] can frequently lift and carry up to and more than 25 pounds.  He does not suffer any additional manipulative limitations.  He can sit at least seven hours of an eight-hour workday.  He can stand at least six hours of an eight-hour workday.  He can walk up to one hour without interruption and a total of four hours over the course of an eight-hour workday.  He can occasionally climb, balance, stoop, kneel or crouch.  He cannot crawl.  He should avoid any exposure to extreme temperatures.  He can tolerate frequent exposure to wetness and humidity and occasional exposure to fumes, odors, dust,

>gases, poorly ventilated areas and other pulmonary irritants.  He should avoid any exposure to operating hazardous machinery and unprotected heights.  He can operate a motor vehicle seven hours of an eight-hour workday.

Tr. 49.  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is "able to perform past relevant work" as a security guard.  Tr. 55.  Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 55.  The ALJ identified several representative occupations, including "assembler, electrical accessories," "wire worker," and "hand packager."  Tr. 56.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from February 28, 2012, through the date of this decision[.]"  Tr. 56.

## IV.  PLAINTIFF'S CLAIM

Plaintiff presents one issue for the court to consider in its review of the Commissioner's decision:  "[w]hether the ALJ's finding that [Plaintiff] has the residual functional capacity to perform light work . . . with limited exceptions is supported by substantial evidence."  Pl.'s Br. (Doc. 13) at 5.

## V.  DISCUSSION

Plaintiff argues that the ALJ's findings that Plaintiff can perform light work with certain exceptions and that he can perform his past relevant work as a security guard are not supported by substantial evidence.  Pl.'s Br. (Doc. 13) at 6.  In support of his

6

argument, Plaintiff mostly relies on his own testimony regarding his subjective complaints of the severity of his ailments. Specifically, Plaintiff contends (1) that the ALJ's findings are "simply inconsistent with [Plaintiff]'s severe medical problems" because Plaintiff's "respiratory problems and side effects of his medications" cause him to be "unable to perform any job that requires a good deal of walking or standing or even sitting which requires pushing and pulling arm and leg controls," *Id.* at 6, 7; (2) that if he is unable to perform sustained work on a regular and continuing basis, he is disabled according to SSP 96-8, *Id.* at 7; and (3) that the VE testified that if Plaintiff's testimony had been found credible regarding daytime naps and occasionally using oxygen during the course of the day, there would be no jobs that Plaintiff could perform, *Id.* Each of Plaintiff's arguments, and the evidence supporting the ALJ's findings relevant thereto, are discussed below.

### A.     Plaintiff's Respiratory Problems

Plaintiff's first challenge to the ALJ's finding is that Plaintiff's respiratory problems are too severe for Plaintiff to be capable of the light work RFC as assessed by the ALJ. Pl.'s Br. (Doc. 13) at 6-7. Plaintiff argues that his "respiratory problems are so severe that he has to use Albuterol four times a day and oxygen on a regular basis," and, as he testified, "he uses oxygen every night and whenever he cannot catch his breath." *Id.* Additionally, Plaintiff "testified that if he walks to the mailbox, he can hardly catch his breath and must use oxygen for about 30 minutes." *Id.* Plaintiff does not point to any

medical evidence of record in support of his argument. Rather, he relies on his own subjective statements to evidence his inability to sustain employment.

When considering the credibility of a claimant's subjective complaints, the ALJ has wide discretion so long as the he "clearly articulate[s] explicit and adequate reasons" for the credibility determination. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted). This court must uphold the ALJ's credibility determination if it is supported by substantial evidence, s*ee Wilson v. Barnhart*, 284 F.3d 1219, 1246 (11th Cir. 2002) ("If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so."), which is "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Here, the ALJ found Plaintiff's complaints to be incredible, and the ALJ clearly articulated explicit and adequate reasons for his credibility determination. The ALJ explained,

> The undersigned has considered all of the evidence of record and the testimony offered at the hearing and in light of this, finds [Plaintiff] to be less than credible. For example, he reported to Dr. Smith that he was able to tend to his personal care needs and the household chores without assistance. He stated that he does not drive but revealed to Dr. Smith that his license was suspended due to DUI. [Plaintiff] alleged a disability as of February 2012 but admitted he lost his job in 2010 when the business closed. There is no indication he actively sought other employment, including employment that was indoors to accommodate his respiratory condition. He continued to smoke excessively and was repeatedly cautioned by treating physicians regarding the dangers of his habit. He stated he even got a "cancer scare" which caused him to stop, but apparently, it did not alarm him enough to stop smoking.

Tr. 54.

Additionally, the ALJ noted several pieces of medical evidence that contradicted the severity of Plaintiff's description of his breathing problems.  Specifically, the ALJ pointed to the following evidence of record:  when Plaintiff "underwent a teleclaim interview with a social security claims representative, [he] was not perceived [as having] any difficulty . . . breathing," Tr. 50; in March 2012, "his wheezing was only minor when he was examined" and his pulse oxygen level was 97% on room air, Tr. 51-52; in April 2012, Plaintiff "was not wheezing during the examination" and completed a breathing test that "reflected an improvement after medication was administered," Tr. 52; in April 2013, Plaintiff's oxygen "saturation averaged between 93 and 95% on room air," "his lungs expanded bilaterally without any signs of wheezes, rales, or rhonchi," and "[h]is treatment was conservative in nature," Tr. 53.  The ALJ also noted throughout the decision that, despite Plaintiff's serious, subjective complaints of breathing problems, Plaintiff continued to smoke, as much as up to two packs of cigarettes a day, except for one brief period where Plaintiff quit smoking temporarily.  Tr. 51-53.  The ALJ took the position that had Plaintiff's breathing problems been as severe as he alleges they were, Plaintiff would have cut back or given up his smoking habit.  Tr. 54.

The court finds that the ALJ has clearly articulated explicit and adequate reasons for finding Plaintiff's subjective complaints regarding the severity of his breathing troubles to be not credible.

### B. Side Effects of Plaintiff's Medication

Second, Plaintiff argues that the RFC is not supported by substantial evidence because the side effects of his medication cause him to be overly drowsy. Pl.'s Br. (Doc. 13) at 7. Plaintiff contends that he "takes Loretab 7.5 three times a day for pain management and Xanax for anxiety and both medications make him drowsy," and "he takes daytime naps for several hours two or three days of the week and cannot get through a whole week without taking a nap." *Id.*

The ALJ found that Plaintiff's "allegations cannot be objectively verified with any reasonable degree of certainty." Tr. 54. Further, the ALJ explained that Plaintiff's "activities of daily living further undermine his credibility." Tr. 54.

> [T]here is no evidence in the record that medication side effects can be expected to limit [Plaintiff]'s effectiveness in the performance of work duties or everyday tasks or that those side effects can be expected to be severe and to limit [Plaintiff]'s effectiveness due to distraction, inattention and drowsiness.
>
> There is no medical evidence of record to support [Plaintiff]'s contention that he has to recline or nap during the day. Further, there is no evidence that [Plaintiff] has been on any medications on a regular and continual basis that would cause such to occur.

Tr. 54. The ALJ also noted that the evidence indicates that Plaintiff has no limitation in concentration, persistence, or pace; has no limitations in his ability to understand, remember and carry out instructions, and is "able to drive an automobile as well as take care of his personal needs and enjoyed watching television, all of which are tasks and activities that require a certain level of sustained concentration and attention." Tr. 48, 52.

10

The court finds that the ALJ has clearly articulated explicit and adequate reasons for finding Plaintiff's subjective complaints regarding the side effects of his medication to be not credible.

### C.     Testimony of the VE

Third, Plaintiff contends the RFC is not supported by substantial evidence because "[t]he [VE] testified that if the totality of [Plaintiff]'s impairments, limitations, pain and medications precluded [Plaintiff] from having the concentration, persistence and pace necessary to perform unskilled work activities and further limited his ability to attend to all customary work pressures, including arriving on time [and] returning from breaks on time, there would be no jobs in significant numbers in the local or national economies that [Plaintiff] could perform." Pl.'s Br. (Doc. 13) at 7.

The ALJ did not find that the totality of Plaintiff's impairments, limitations, pain and medications precluded Plaintiff from having the concentration, persistence and pace necessary to perform unskilled work activities and further limited his ability to attend to all customary work pressures, including arriving on time and returning from breaks on time.  As discussed above, that decision was supported by substantial evidence.  Accordingly, it is of no import that the VE opined that had the ALJ made different findings, there would be no jobs in significant numbers in the local or national economies that Plaintiff could perform.  Plaintiff has shown no error.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 8th day of January, 2016.

>/s/ Wallace Capel, Jr.
>WALLACE CAPEL, JR.
>UNITED STATES MAGISTRATE JUDGE